**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J4 PROMOTIONS, INC.,** | : | **Case No. 08 CV 977** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **SPLASH DOGS, LLC, et al.,** | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

I.    **INTRODUCTION**

On April 16, 2008, the Plaintiff filed a six-count complaint in this Court alleging Copyright

Infringement, Defamation, Deceptive Trade Practices, Tortious Interference with Business Relations,

and Unfair Competition.  (Doc. 1.)  In response, on May 15, 2008, Defendants filed a motion to

dismiss for lack of personal jurisdiction, improper venue, and, in the alternative, to transfer the case

to the Central District of California pursuant to 28 U.S.C. § 1404(a).  (Doc. 15.) On  June 16, 2008,

Plaintiff filed a brief in opposition to Defendants' motion.  (Doc. 22.) This matter is now ripe for

consideration.[1]  For the reasons articulated below, Defendants' motion to dismiss is **DENIED in**

**part and GRANTED in part**, and the case is **TRANSFERRED** to the United States District Court

for the Southern District of Ohio.

_____

[1] The Defendants did not file a reply, and the time for doing so has now expired.

II.   **BACKGROUND**[2]

A.   **PARTIES**

Plaintiff J4 Promotions, Inc., dba DockDogs ("DockDogs"), is a Wyoming corporation with its principal place of business in Medina, Ohio. Plaintiff is engaged in the business of holding and promoting dog sporting events. Plaintiff is particularly known, in this regard, for developing the organized sport of canine dock jumping.[3]

Defendant Splash Dogs, LLC ("Splash Dogs") is a California limited liability company with its principal place of business in Pittsburgh, California. Splash Dogs is also engaged in holding athletic events for dogs, including canine dock jumping.

Defendant Tony Reed is a California resident and is the founder, sole owner, and President of Defendant Splash Dogs. Defendant Reed administered and assisted two of Plaintiff's canine athletic events in November 2005 and February 2006.

Defendant Randy Woods is an Indiana resident and is currently an employee of Defendant Splash Dogs. From 2002 until May 2005, Plaintiff employed Defendant Woods as an independent contractor. During this time, Defendant Woods worked on many of Plaintiff's events and activities. In particular, Defendant Woods served as a judge at one of Plaintiff's events in Pennsylvania.

---

[2] The fact recited in this section are based on the Complaint and the parties' submissions. Because the Court is considering the Defendants' motion without an evidentiary hearing or the benefit of discovery, the pleadings and affidavits are construed in the light most favorable to the Plaintiff. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 720 (6th Cir. 2006).

[3] Canine dock jumping is an event where dogs jump from a specified-sized dock into a specifically designed pool of water to see which dog can jump the farthest.

Defendant Thanh K. Nguyen[4] is a California resident and is an attorney licensed to practice law in California.  Defendant Nguyen has competed as a handler in both Plaintiff's events and Defendant Splash Dogs' events.  Defendant Nguyen has also represented clients in litigation against Plaintiff.

### B.    STATEMENT OF FACTS

Plaintiff began holding and promoting dog sporting events in 2000.  During that year, Plaintiff began holding an event entitled "Big Air Dogs" in conjunction with ESPN's Great Outdoor Games.  This event involved a then-novel competition – canine dock jumping.  In 2007, Plaintiff held over 100 canine athletic events and shows throughout North America with more than 3,000 registrants competing.  Plaintiff's events have been featured on international media venues, such as ESPN, ABC, The Outdoor Channel, and CBS.  Many national corporate sponsors support Plaintiff's business, including: Cabela's, Nutro Products, Inc., Dokken Dog Supply, Inc., Splash Super Pools, SportDOG Brand, Inc., Ducks Unlimited, Jordan Outdoor Enterprises, Ltd. (dba "Realtree"), Hydro Laboratories, and Bass Pro Shops, Inc.

In connection with the canine dock jumping event, Plaintiff developed and promulgated original rules and policies for its events and for its national ranking and qualifications, which it has registered with the United States Copyright Office.  Plaintiff also owns federal trademark registrations or applications for the following marks – DOCKDOGS, SPEED RETRIEVE, EXTREME VERTICAL, DOCK DIVING, and DOCK JUMPING.  Plaintiff uses each of these marks to advertise and promote its canine athletic competitions.  Plaintiff also administers an internet website at www.dockdogs.com, which Plaintiff asserts receives in excess of 45,000 hits per month.

---

[4] Plaintiff alleges that Defendant Nguyen has a number of alias names including Kim Nguyen, Thang Nguyen, and Thank Nguyen.

In 2007, Plaintiff published its first edition of "DockDogs Magazine." This publication is intended to promote Plaintiff's sporting events and to recognize Plaintiff's members and competitors. Plaintiff has also established and sanctioned twenty-one DockDogs affiliate clubs throughout the country to organize and execute Regional Competitions and to assist in training additional competitors for its events. Plaintiff incurs over $100,000 in costs each year to promote its canine athletic competitions and develop awareness of its brand and dog dock jumping events.

Defendant Splash Dogs is also engaged in the business of holding canine athletic events. Defendant Reed initially became interested in organizing and promoting dog dock jumping events after watching Plaintiff's Great Outdoor Games "Big Air" Competition on ESPN in the summer of 2003. Prior to watching this event, Defendant Reed was not aware of the sport of dog dock jumping. Thereafter, Defendant Reed began researching the sport on the internet and found a schedule of Plaintiff's upcoming events. Defendant Reed and his dog, Sierra, attended two of Plaintiff's competitions – "The Incredible Dog Challenge" in San Francisco and the Western Regional Qualifying for the 2003 Great Outdoor Games in Reno, Nevada.

Following his participation in Plaintiff's events, Defendant Reed noticed that there were no upcoming dog dock jumping events scheduled on the West Coast. According to Defendant Splash Dogs' website, Defendant Reed began organizing and promoting dog dock jumping in order to increase the number of competitions held on the West Coast. Defendants Reed and Splash Dogs hosted their first canine dock jumping event in December 2003. In 2004, Defendant Splash Dogs held two events in San Mateo and Sacramento, California.

Beyond managing Defendant Splash Dogs, Defendant Reed worked for Plaintiff at two of its dock dog jumping events. In November 2005, Defendant Reed administered and assisted with

-4-

the United States Dog Agility Association's ("USDAA") World Cynosport Games' dock jumping, which the USDAA held jointly with Plaintiff.  In addition, Defendant Reed administered and assisted Plaintiff with a dog dock jumping event held in Las Vegas in February 2006.  On March 9 through March 11, 2007, Defendants Splash Dogs, Reed, and Woods all held a dog dock jumping event in Columbus, Ohio.  According to Defendant Splash Dogs' on-line schedule of events, the company has five events scheduled for 2009 – two in California, two in Arizona, and one in Utah.  Defendant Woods worked for Plaintiff as an independent contractor from 2002 until May 2005, working various events.

### C. PLAINTIFF'S ALLEGATIONS

On April 16, 2008, Plaintiff filed a six-count Complaint in this Court alleging Copyright Infringement, Defamation, Deceptive Trade Practices under Ohio Revised Code § 4165.02(A)(10), Tortious Interference with Business Relations, Deceptive Trade Practices under Ohio Revised Code § 4165.02(A)(2)-(3), and Unfair Competition under 15 U.S.C. § 1125(a)(1)(A).

With respect to Plaintiff's claim for Copyright Infringement, Plaintiff alleges that Defendant Splash Dogs' "Rules & Regulations" are substantially similar to Plaintiff's "Rules & Policies," which are registered with the United States Copyright Office.  Plaintiff published its "Rules & Policies" prior to the time that Defendant Splash Dogs drafted its "Rules & Regulations."  Plaintiff contends that Defendants Splash Dogs, Reed, and Woods copied Plaintiff's "Rules & Policies" almost verbatim in drafting Defendant Splash Dogs' "Rules & Regulations."[5]  Plaintiff also alleges that the above-mentioned Defendants knew that Plaintiff's "Rules & Policies" were protected by copyright when they participated in the drafting and preparation of Defendant Splash Dogs' "Rules

---

[5]  Plaintiff attached as Exhibit C to the Complaint a chart comparing its Rules & Policies to Splash Dogs' Rules & Regulations.  (Doc. 1-4.)

-5-

& Regulations."

Plaintiff further contends that Defendants Reed and Woods – in their individual capacity and on behalf of Defendant Splash Dogs – made defamatory statements to third parties about Plaintiff. Plaintiff also alleges that Nguyen made defamatory statements to third parties about Plaintiff. Specifically, Plaintiff claims that Defendants told third parties that Plaintiff "lie[s]" and "cheat[s]" at its events, that Plaintiff's equipment is "second rate and very inaccurate," and that Plaintiff "has no idea what it is doing when it comes to electronics." (Complaint at ¶ 62.)  These statements were allegedly made to Bart Richardson (a California resident), Tom A. Dropik (a Minnesota resident), and Justin Tackett (an Arizona resident).  Plaintiff does not allege that any of the Defendants defamed Plaintiff in Ohio.  Plaintiff avers, however, that Defendant Woods posted defamatory statements about Plaintiff on Plaintiff's website.  (Doc. 22, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss at 15).

Plaintiff's claim for Deceptive Trade Practices pursuant to Ohio Revised Code § 4165.02(A)(10) is predicated upon the alleged defamatory statements recounted above.  In particular, Plaintiff contends that by making defamatory statements, "Defendants have disparaged the goods, services, and/or business of Plaintiff by false representations of fact." (Complaint at ¶ 71.)

Plaintiff also contends that Defendants Splash Dogs, Reed, and Woods contacted some of Plaintiff's corporate sponsors and asked them to sponsor Defendant Splash Dogs and forgo or reduce sponsoring Plaintiff.[6]  Plaintiff alleges that these activities constituted Tortious Interference with Business Relations.  Plaintiff claims that Defendants knew that Plaintiff and these corporations had business relations.  Plaintiff further alleges that Defendants' actions caused Plaintiff harm.

---

[6] Plaintiff contends that Defendants contacted Cabela's, Nutro Products, Inc., Dokken Dog Supply, Inc., Splash Super Pools, Sport DOG Brand, Inc., Ducks Unlimited, Jordan Outdoor Enterprises, Ltd. (dba "Realtree"), Hydro Laboratories, and Bass Pro Shops, Inc.

-6-

Specifically, Plaintiff contends that Splash Super Pools and Bass Pro Shops, Inc. reduced their sponsorship of Plaintiff and began sponsoring Defendant Splash Dogs.  Plaintiff also alleges that "[a]s a result of intervention by Defendants, Defendant Splash Dogs now administers and organizes, and receives the benefits of, the USDAA's Cynosport World Games' canine dock jumping events." (Complaint at ¶ 84.)  Plaintiff does not, however, contend that Defendants contacted any of the corporate sponsors in Ohio.

Plaintiff further claims that Defendants Splash Dogs, Reed, and Woods engaged in deceptive trade practices in violation of Ohio Revised Code § 4165.02(A)(2)-(3).  In particular, Plaintiff alleges that "[b]y incorporating . . . numerous elements from Plaintiff's events and Plaintiff's Rules and Policies listed above into Defendant Splash Dogs' events and Rules & Regulations, Defendants Splash Dogs, Reed, and Woods have created a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and services." (Complaint at ¶ 95.)  With respect to the similarities between Plaintiff and Defendants' dog dock jumping events, Plaintiff claims that "Defendants misappropriated and copied Plaintiff's divisions for scoring, distance breakouts, dock size and dimensions, equipment requirements, site layout, equipment setup, pool size, award procedure, methods for manual judging, and division title and rankings."(Complaint at ¶ 37.)   Plaintiff also contends that Defendants made references to Plaintiff's past and current events in an attempt to misrepresent such events as the Defendant Splash Dogs' event.  Plaintiff alleges that the references created a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and services.  Finally, Plaintiff claims that, by adopting the marks "SPLASH DOGS," and "GOT DOCK SPLASH DOGS.COM," Defendants Splash Dogs, Reed, and Woods have created a likelihood of confusion or

misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and services in violation of Ohio Revised Code § 4165.02(A)(2).

Plaintiff's claim for Unfair Competition pursuant to 15 U.S.C. § 1125(a)(1)(A) is predicated upon this same conduct.[7]  In particular, Plaintiff claims that Defendants Splash Dogs, Reed, and Woods incorporated numerous elements from Plaintiff's events and Plaintiff's Rules & Policies into Defendant Splash Dogs' events and Rules & Regulations.  Plaintiff further contends that this conduct, as well as Defendant Splash Dogs, Reed, and Woods' conduct of adopting marks similar to that of Plaintiff's marks is:

> likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with the Plaintiff, or as to the origin sponsorship, or approval of Defendants, their services, and/or their commercial activities by or with the Plaintiff and thus constitutes false designation of origin/unfair competition, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

(Complaint at ¶ 102.)

## III.     STANDARD OF REVIEW FOR A RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction exists.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).  A district court ruling on a motion to dismiss for lack of personal jurisdiction may rely on affidavits alone in reaching a decision, may permit discovery to assist with its decision, or may conduct an evidentiary hearing to resolve any apparent factual disputes.  *Cleveland Browns Football Co., LCC v. Hawaii-Pacific Apparel*, 90 Fed. Appx. 868, 869 (6th Cir. 2004).  "The method selected is left to the

---

[7]  Although the Unfair Competition claim is the sixth Count alleged in the Complaint, Plaintiff mistakenly captions it as Count V, not Count VI.  The Court treats this as a clerical error and will refer to the Unfair Competition claim as Count VI.

discretion of the district court." *Fauercia Exhaust Sys., Inc., v. Walker*, 464 F. Supp. 2d 700, 704 (N.D. Ohio 2006).

Where, as here, the court considers defendant's motion based on affidavits alone and neither has the benefit of discovery, nor conducts an evidentiary hearing, the pleadings and affidavits must be construed in a light most favorable to the plaintiff and the plaintiff must only advance a *prima facie* showing of personal jurisdiction in order to overcome the defendant's motion. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 720 (6th Cir. 2006). "Dismissal in this procedural posture is proper only if **all** the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). (emphasis added).

In order to determine whether personal jurisdiction over a particular defendant exists, a district court must apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). As such, a federal court sitting in either diversity or federal question jurisdiction must apply a two-pronged test for personal jurisdiction – (1) "the defendant must be amenable to suit under the forum state's long-arm statute and (2) the due process requirements of the Constitution must be met." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994).

IV.   **PERSONAL JURISDICTION ANALYSIS**

   A.   **STEP ONE OF THE PERSONAL JURISDICTION ANALYSIS – THE OHIO LONG-ARM STATUTE**

The first step of the personal jurisdiction analysis requires the Court to apply the Ohio long-arm statute. The Court finds that Defendants Splash Dogs, Reed, and Woods are subject to personal jurisdiction for each claim under the Ohio long-arm statute and that Defendant Nguyen is subject to

personal jurisdiction for Defamation and Deceptive Trade Practices, pursuant to Ohio Revised Code § 4165.02(A)(10),  under the Ohio long-arm statute.

> The relevant portions of the Ohio long-arm statute, O.R.C. § 2307.382, provide:
>
> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
> . . .
>
> (6) Causing tortious injury in this state to any person by an act or omission outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Furthermore, according to O.R.C. § 2307.382(C), "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."  Thus, "[l]ong-arm jurisdiction, unlike general jurisdiction, exists only as to causes of action arising out of the particular contacts on which jurisdiction is based."  *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 550 (6th Cir. 1995).  As such, in order to exercise personal jurisdiction over Defendants, the Court must analyze each cause of action individually to determine whether that the particular claim arises out of Defendants' contacts with Ohio.[8]

---

[8]  The Plaintiff does not assert that personal jurisdiction is based on anything other than the provisions of the Ohio long-arm statute, O.R.C. § 2307.382.  Therefore, the Court need not consider the question of whether step one of the personal jurisdiction analysis could be premised on general jurisdiction in this case, as the Federal Circuit and, arguably, the Sixth Circuit, has interpreted Ohio law to hold.  *See Delta Sys. Inc. v. Indak Mfg. Corp.*, 4 Fed. Appx. 857 (Fed. Cir. 2001) (following *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000)); *see, e.g.*, *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).  The Court merely notes, once again, that Ohio law on this issue is at least debatable.  *See Avery Dennison Corp., v. Alien Tech. Corp.,* 08 CV 795, 2008 U.S. Dist. LEXIS 98173, at *19-20 (N.D. Ohio Dec. 4, 2008) (O'Malley, J.) (citing *Swinson v. FedEx Nat'l, Inc.*, No. 1:08cv1028, 2008 U.S. Dist. Lexis 76292, at *2-4 (N.D. Ohio Aug. 28, 2008) (O'Malley, J.)).

### 1.     Copyright Infringement

This Court finds that Defendants Splash Dogs, Reed, and Woods[9] not only transacted business in Ohio, but also caused tortious injury in Ohio by an act outside the state which they reasonably should have expected to injure an Ohio resident.  Further, the Court concludes that Plaintiff's cause of action for Copyright Infringement at least partially arose out of Defendants' contacts with Ohio.  As such, this Court has personal jurisdiction under the Ohio long-arm statute with respect to Plaintiff's Copyright Infringement claim as to Defendants Splash Dogs, Reed, and Woods pursuant to O.R.C. § 2307.382 (A)(1) and (A)(6).

### i.     Defendants Splash Dogs, Reed, and Woods Transacted Business in Ohio.

This Court has personal jurisdiction over Defendants Splash Dogs, Reed, and Woods under O.R.C. § 2307.382(A)(1) because these Defendants have "transacted business" in Ohio.  The Ohio Supreme Court has held that O.R.C. § 2307.382(A)(1) is very broadly worded and "permits jurisdiction over non-resident defendants who are *transacting any* business in Ohio."  *Kroger Co. v. Malease Food Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (emphasis added) (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990)).  "Transact" as utilized in the phrase "transacting any business" means to prosecute negotiations; to carry on business; [and] to have dealings . . . ."  *Mansfield Props., LLC v. Med. Dev. Mgmt., LLC*, 08-CV-668, 2008 U.S. Dist. LEXIS 70841, at *20 (September 5, 2008 N.D. Ohio); *see also, Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994) (citing *Kentucky Oaks*, 53 Ohio St. 3d at 75.)  Furthermore, "[t]he word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader

---

[9]  The Complaint does not assert a claim for copyright infringement against Defendant Nguyen.

-11-

term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.* 198 Fed. Appx. 425, 431 (6th Cir. 2006).  Moreover, physical presence within the state is not a prerequisite to finding personal jurisdiction. *Faurecia*, 464 F. Supp 2d at 706.  The Sixth Circuit has held that a person "'transacts business' in Ohio if the business operations set in motion by the defendant have a 'realistic impact' on Ohio commerce." *Priess v. Fisherfolk*, 535 F. Supp. 1271, 1274 (S.D. Ohio 1982) (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 221 (6th Cir 1972)).

Here, Defendants Splash Dogs, Reed, and Woods held a three-day canine sporting event in Columbus, Ohio, from March 9 through March 11, 2007.  Furthermore, it is undisputed that Defendants Reed and Woods worked for Plaintiff, an Ohio corporation.  In November 2005, Defendant Reed worked for Plaintiff administering and assisting with the USDAA World Cynosport Games' dock jumping, which the USDAA held jointly with Plaintiff.  In February 2006, Defendant Reed also administered and assisted Plaintiff with an event in Las Vegas.  Further, from 2002 until May 2005, Woods worked as an independent contractor for Plaintiff.  Plaintiff paid Defendants Reed and Woods for their services through an Ohio bank account.  Finally, Plaintiff and Defendant Woods also entered into two other agreements involving dock rental and dock storage.

First, it is clear that Defendant Splash Dogs' event, held in Columbus and administered by Defendants Woods and Reed, had an impact on Ohio commerce.  These Defendants marketed this event to Ohio residents through Defendant Splash Dogs' website and allowed Ohio residents to register for the event on that website.  Furthermore, Defendants invited individuals to Columbus to attend and participate in their canine athletic event.  Moreover, Defendants rented the "Columbus Pet Expo" in order to host this event.  Thus, the Defendants "transacted business" in Ohio by virtue

-12-

of this contact alone.

Defendants Reed's and Woods' employment relationships with the Ohio-based Plaintiff further support the conclusion that these Defendants "transacted business" in Ohio. Notably, this employment relationship spanned a number of years, during which Plaintiff paid Defendants from an Ohio bank account. Consequently, Defendants Splash Dogs, Reed, and Woods "transacted business," as that term is defined in the Ohio long-arm statute, in Ohio.

In order to demonstrate that the defendants are subject to personal jurisdiction under the Ohio long-arm statute, the plaintiff must not only demonstrate that the defendants transacted business in Ohio, but also that the "cause of action ar[ose] from the business transacted . . ." O.R.C. § 2307.382(C). Defendants contend that plaintiff's claims are unrelated to Defendants' contacts with Ohio because "Splash Dogs' rules and regulations . . . did not exist at the time" that they hosted their canine athletic event in Columbus. Essentially, the Defendants argue that, because they had not drafted their "Rules & Regulations" until after the Columbus event, Plaintiff's claims could not have arisen out of that event.

The Court finds that the Copyright Infringement cause of action asserted by Plaintiff does arise, at least partially, out of Defendants Splash Dogs, Reed, and Woods' contacts with Ohio. Defendant's argument ignores the as yet unresolved factual debate over whether the allegedly infringing "Rules & Regulations" were drafted prior or subsequent to the Columbus event. Plaintiff contends the Defendants' rules in fact *were* in place before the Columbus event. Under the standard for ruling on a motion to dismiss for lack of personal jurisdiction, this Court cannot "consider facts proffered by the defendant that conflict with those offered by the plaintiff." *See Bird*, 289 F.3d at 872 (finding that all inferences had to be drawn in favor of the plaintiff although the plaintiff's

-13-

assertion that defendant sold 4,666 domain names to Ohio residents "lack[ed] any direct factual support").  Accordingly, the Court finds that Plaintiff's cause of action for Copyright Infringement at least partially arose out of Defendants Splash Dogs, Reed, and Woods' contacts with Ohio.

> **ii.** **Defendants Splash Dogs, Reed, and Woods' Conduct Falls Within Sub-Section (A)(6) of the Ohio Long-Arm Statute**

Even if this Court were to conclude that Defendants Splash Dogs, Reed, and Woods did not promulgate Defendant Splash Dogs' "Rules & Regulations" until after the March 2007 event, this Court has personal jurisdiction over these Defendants with respect to Plaintiff's Copyright Infringement claim under the Ohio long-arm statute pursuant to O.R.C. § 2307.382(A)(6) because these Defendants caused tortious injury to the Ohio-based Plaintiff by an act outside the state which they should have expected to cause injury to the Plaintiff.  The Ohio long-arm statute provides:

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action from the person's . . . [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

O.R.C. § 2307.382(A)(6).  The Sixth Circuit has held that "because a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, the injury occurs both in the places where the plaintiff does business and in the state where its primary office is located."[10]  *Bird*, 289 F.3d at 876; *see also, Cash Homebuyers, Inc v. Morningstar, Inc.*, No.5:05 CV 2296, 2006 WL 2869564, *1,*4 (N.D. Ohio Oct. 5, 2006) (holding that plaintiff alleging

---

[10] It should be noted that the *Bird* Court analyzed the issue of personal jurisdiction under O.R.C. § 2307.382(A)(4) of the Ohio long-arm statute.  That section of the Ohio long-arm statute also subjects a defendant to personal jurisdiction for "tortious injury in [Ohio] by an act or omission outside [of Ohio] . . ." *Id.*  However, (A)(4) only applies when the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." *Id.*

-14-

copyright infringement established personal jurisdiction under O.R.C. § 2307.382(A)(6) when the plaintiff alleged that the defendant used, downloaded, and distributed plaintiff's copyrighted materials); *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (finding that the "brunt" of the harm suffered by plaintiff due to copyright infringement occurred at plaintiff's principal place of business).

*Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship.*, 34 F.3d 410 (7th Cir. 1994) is particularly instructive here.  In *Indianapolis Colts*, the court held that the defendants were subject to personal jurisdiction in Indiana based on an alleged trademark infringement committed by the defendants in Baltimore.  *Id.* at 412.  There, the Canadian Football League ("CFL") named its new Baltimore-based team the "Baltimore CFL Colts."  *Id.* at 411.  Thereafter, the Indianapolis Colts and the National Football League brought suit alleging trademark infringement based upon the substantially similar name chosen by the CFL.  *Id.*  The defendants contended that they were not subject to personal jurisdiction in Indiana because the team's only contact with the state was the broadcast of its games on nationwide cable television.  *Id.*  The Seventh Circuit rejected this argument and found that "[i]f the trademarks are impaired . . . the injury will be felt mainly in Indiana."  *Id.*  Further, the court expressed skepticism as to whether any additional contacts would be necessary to establish personal jurisdiction over the defendants, but ultimately deferred that issue because the defendants had an additional contact with the state of Indiana.  *Id.* at 411-12.  Specifically, the court determined that the defendants "entered" the state through their broadcasts.  *Id.* at 412.  As such, the court found that the defendants were subject to personal jurisdiction in Indiana.  *Id.*

This court finds the rationale of *Indianapolis Colts* persuasive.  Thus, applying the facts of

*Indianapolis Colts* to this case, it is clear that Defendants Splash Dogs, Reed, and Woods are amenable to suit in Ohio for their alleged copyright infringement.  Both the plaintiffs in that case and the Plaintiff here primarily use their intellectual property in the desired forum.  Further, as in *Indianapolis Colts*, the injury caused by the conduct of Defendants Splash Dogs, Reed, and Woods will be felt most severely in the Plaintiff's principal place of business – Ohio.  Finally, the additional contacts offered in support of plaintiff's position in *Indianapolis Colts* are less compelling than those alleged by plaintiff in this case.  As stated above, in *Indianapolis Colts*, the defendants' only additional contact with the forum was the broadcasting of the games into the state.  By contrast, Defendants Splash Dogs, Reed, and Woods actually made a physical entry into the state and held a three-day event in Columbus, Ohio.  Accordingly, under the same rationale, Defendants Splash Dogs, Reed, and Woods are subject to personal jurisdiction under the Ohio long-arm statute in Ohio for their alleged copyright infringement.

### 2.  Defamation

The Court finds that it has personal jurisdiction with respect to the defamation claim under the Ohio long-arm statute over each Defendant.  The alleged defamatory statements rendered by the Defendants, outside of Ohio, caused tortious injury to the Ohio-based Plaintiff, in Ohio, and Defendants knew and reasonably should have known that such statement would cause Plaintiff injury.

As discussed above, a defendant is subject to personal jurisdiction under the Ohio long-arm statute – specifically O.R.C. § 2307.382 (A)(6) – where that defendant causes tortious injury in Ohio by an act committed outside of the state when he "might reasonably have expected that some person would be injured in Ohio." *Farr v. Spatial Tech., Inc.*, 152 F.R.D. 113, 116 (S.D. Ohio 1993).  A

-16-

defendant who posts defamatory statements about an Ohio-based plaintiff on the internet is amenable to suit in Ohio under O.R.C. § 2307.382 (A)(6). *Kauffman Racing Equip. v. Roberts*, No. 07-CA-14, 2008 WL 1821374, at *3 (Ohio App. Ct. 5th Dist. April 18, 2008). Furthermore, where defamatory statements are made outside of the state with the purpose of injuring an Ohio resident and there is a reasonable expectation that injury will occur in Ohio, the requirements of O.R.C. § 2307.382 (A)(6) are satisfied. *Farr*, 152 F.R.D. at 116.

In this case, Plaintiff alleges that Defendants Splash Dogs, Reed, Woods, and Nguyen made numerous false and defamatory statements about Plaintiff. Specifically, Plaintiff contends that Defendants stated to third parties that Plaintiff "lies" and "cheats" at its events, that Plaintiff's "scoring methods and equipment are second rate and very inaccurate," and that Plaintiff "has no idea what it is doing when it comes to electronics." (Complaint at ¶¶ 62-64.) Plaintiff claims that Defendants made these statements to Bart Richardson, Tom Dropik, and Justin Tackett. None of these individuals is an Ohio resident. Plaintiff also avers that Defendant Woods posted defamatory statements on Plaintiff's website, which is administered and maintained in Ohio. Although Plaintiff does not expressly address where the Defendants uttered the allegedly defamatory statements, it does not dispute Defendant's assertion that the statements were made outside of Ohio. Further, Plaintiff's reliance upon O.R.C. § 2307.382 (A)(6) confirms that any supposed defamation did not occur in Ohio, as that section concerns an act or omission committed outside of the state.

First, this Court finds *Kauffman* dispositive on the issue of whether Woods is subject to personal jurisdiction under the Ohio long-arm statute for defamation. 2008 WL 1821374 at *3. In that case, the defendant purchased an engine block and related equipment from the plaintiff– an Ohio Limited Liability Company. *Id*. at *1. Thereafter, a dispute arose between the plaintiff and the

defendant as to whether the product was defective. *Id*. While the defendant insisted that the engine block was defective, the plaintiff maintained that it had been substantially modified and refused to repurchase it. *Id*. As a result of this dispute, the defendant posted messages on various internet websites criticizing the plaintiff and its products. *Id*. In response, the plaintiff commenced suit alleging defamation. *Id*. Despite a jurisdictional challenge, the state court found defendant amenable to suit in Ohio because he posted the defamatory messages on the internet. *Id*. at *3. In so holding, the court determined that the defendant's act of posting the messages on the internet was committed with the purpose of injuring the plaintiff. *Id*.

In applying *Kauffman* to this case, it is clear that Woods is subject to personal jurisdiction in Ohio under O.R.C. § 2307.382 (A)(6) because both the defendant in *Kauffman* and Defendant Woods posted allegedly defamatory statements on internet websites. The Court concludes, moreover, that the exercise of personal jurisdiction over Woods, under the Ohio long-arm statute, is even more compelling than was the assertion of jurisdiction over the defendant in *Kauffman* since Woods made his defamatory statement on a website maintained and administered in Ohio. Accordingly, this Court has personal jurisdiction under O.R.C. § 2307.382 (A)(6) over Woods, with respect to the defamation claim.

The Court also finds that personal jurisdiction has been established under O.R.C. § 2307.382 (A)(6) over Defendants Splash Dogs, Reed, and Nguyen.[11] This conclusion is based upon the plain language of (A)(6) as well as the broad manner in which this section has been applied.

Under O.R.C. § 2307.382 (A)(6), a plaintiff seeking to establish personal jurisdiction need

---

[11] While Defendant Woods allegedly posted defamatory statements about Plaintiff on the internet, the Plaintiff does not contend the other Defendants engaged in such conduct. Rather, Plaintiff alleges that Defendants Splash Dogs, Reed, and Nguyen made verbal statements to third parties defaming Plaintiff.

-18-

only demonstrate that the defendant "caus[ed] tortious injury in this state . . . by an act or omission outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured" in Ohio.  Here, Plaintiff has clearly satisfied these elements.  In particular, Plaintiff – an Ohio-based company with its principal place of business in Medina, Ohio – alleges that it suffered harm as a result of Defendant Splash Dogs, Reed, and Nguyen making defamatory statements to third parties outside of Ohio.  Further, Plaintiff contends that these Defendants knew that such statements would cause injury to Plaintiff in Ohio.  Consequently, this Court has personal jurisdiction over Defendants Splash Dogs, Reed, and Nguyen for defamation under the Ohio long-arm statute.  *See also, Farr*, 152 F.R.D. at 116 (subjecting the defendant to personal jurisdiction under O.R.C. § 2307.382 (A)(6) where the defendant made defamatory remarks to plaintiff during a phone conversation and the "subject phone call was . . . made outside the state, for the purpose of injuring [plaintiff]" in Ohio).

### 3. Deceptive Trade Practices Under Ohio Revised Code § 4165.02(A)(10)

The Court finds that each Defendant is subject to personal jurisdiction under the Ohio long-arm statute, O.R.C. § 2307.382 (A)(6), with respect to Plaintiff's Deceptive Trade Practices claim pursuant to O.R.C. § 4165.02(A)(10).[12]  Plaintiff avers that, by making the defamatory statements, outlined in the previous section, "Defendants have disparaged the goods, services, and/or business

---

[12] Section 4165.02(A)(10) of the Ohio Revised Code provides:

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
. . .
(10) Disparages the goods, services, or business of another by false representation of fact . . . .

-19-

of Plaintiff DockDogs by false representations of fact . . ." (Complaint at ¶ 71.)  Thus, Plaintiff's claim for Deceptive Trade Practices is predicated upon the same conduct described above. Accordingly, applying the analysis from the preceding section to this claim, the Court determines that each Defendant is subject to personal jurisdiction under the Ohio long-arm statute for Deceptive Trade Practices under O.R.C. § 4165.02(A)(10).

### 4. Tortious Interference with Business Relations

A defendant is amenable to suit in Ohio for tortious interference pursuant to O.R.C. § 2307.382 (A)(6) where he engages in tortious interference out of state which he reasonably expects will injure the plaintiff in Ohio.  *Omega Cable & Comm'ns, Inc. v. Time Warner, Inc.*, No.5: 05 CV 1780, 2006 U.S. Dist. LEXIS 50258, at *6-7 (N.D. Ohio July 24, 2006).  In *Omega*, defendant Texas Cable told defendant Time Warner Cable's Northeast Ohio Division ("TWNO") that plaintiff Omega engaged in false billing in connection with a contract between TWNO and Omega.  *Id.* at *4.  Texas Cable also advised TWNO to terminate its contract with Omega.  *Id.*  Shortly thereafter, TWNO ended its contractual relationship with Omega predicating the termination, in part, on false billing. *Id.*  In response, Omega brought suit in Ohio under the Ohio Deceptive Trade Practices Act alleging tortious interference with business relations.  *Id.*  The defendants moved to dismiss for lack of personal jurisdiction on grounds that Texas Cable contacted TWNO from Texas.  *Id.*  The Court denied defendants' motion and held that "Omega properly state[d] a *prima facie* case that Texas Cable's out-of-state conduct caused tortious injury to Omega in Ohio."  *Id.* at *8. (emphasis added). The Court also concluded that Texas Cable "reasonably expected its out of state conduct to injure Omega in the state of Ohio."  *Id.* at *8-9.  Thus, the Court found jurisdiction proper under the Ohio long-arm statute, O.R.C. § 2307.382 (A)(6).

Applying the facts in *Omega* to the facts in this case, the Court concludes that Defendants Splash Dogs, Woods, and Reed are subject to personal jurisdiction for Tortious Interference with Business Relations under the Ohio long-arm statute.[13]  Similar to the defendant in *Omega*, who contacted TWNO and insisted that it cease its contractual relationship with Omega, Defendants Splash Dogs, Reed, and Woods allegedly asked Plaintiff's sponsors to stop sponsoring the Plaintiff or to reduce their sponsorship of the Plaintiff.  (Complaint at ¶ 81.)  Likewise, both the defendant in *Omega* and the Defendants in this case knew that the particular plaintiffs and the contacted entities were engaged in business relations.  (Complaint at ¶¶ 87, 90.)  Furthermore, like the defendant in *Omega*, the Defendants here allegedly committed tortious interference outside the state of Ohio under circumstances which they reasonably expected would injure Plaintiff in Ohio.  (Complaint at ¶¶ 77, 89.)  As such, this Court has personal jurisdiction over Defendants Splash Dogs, Woods, and Reed with respect to Plaintiff's claim for Tortious Interference with Business Relations under the Ohio long-arm statute.

>    **5.     Deceptive Trade Practices Under Ohio Revised Code § 4165.02(A)(2)-(3) and Unfair Competition**

As discussed above, this Court finds that Defendants Splash Dogs, Reed, and Woods "transacted business" in Ohio as defined in O.R.C. § 2307.382(A)(1).  Furthermore, the Court concludes that Plaintiff's claims for Deceptive Trade Practices under O.R.C. § 4165.02(A)(2)-(3)[14]

---

[13]  The Complaint alleges that "Splash Dogs, Reed, and Woods, <u>and possibly others</u>" tortiously interfered with Plaintiff's relationships with its sponsors.  (Complaint at ¶ 77.)  Such vague language is insufficient to state a claim against anyone other than the defendants expressly named.

[14]  Sections 4165.02(A)(2)-(3) of the Ohio Revised Code provide as follows:

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

-21-

and Unfair Competition arise out of Defendants Splash Dogs, Reed, and Woods'[15] transacting business in Ohio as required by O.R.C. § 2307.382(C).

At the outset, this Court's determination that Splash Dogs, Reed, and Woods transacted business in Ohio is based in large part on the fact that each of these Defendants hosted and attended Splash Dogs' March 2007 canine athletic event held in Columbus, Ohio.  Defendants, however, continually argue that no cause of action could have arisen out of this event because Splash Dogs' "Rules and Regulations" were not promulgated until after the event.  The Court disagrees with Defendants' contention for two reasons.  First, as stated previously, this is a disputed fact which must be weighed in favor of the Plaintiff upon a motion to dismiss for lack of personal jurisdiction. Moreover, even if Defendants did not draft their rules until after the Columbus event, they would still be subject to personal jurisdiction for Deceptive Trade Practices and Unfair Competition because Plaintiff alleges several times that the Defendants' events themselves infringe Plaintiff's rights.  Specifically, Plaintiff contends that Defendants "misappropriated and copied numerous aspects of Plaintiff's business and wrongfully incorporated them into Defendants' business." (Complaint at ¶ 37.)  In particular, Plaintiff claims that Defendants "copied Plaintiff's divisions for scoring, distance breakouts, dock size and dimensions, equipment requirements, site layout, equipment setup, pool size, award procedure, methods for manual judging, and division titles and rankings."  *Id.*  Further, Plaintiff specifically states in its causes of action for Deceptive Trade

. . .
(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another . . . .

[15] The Plaintiff is not asserting this particular claim against Defendant Nguyen.

-22-

Practices and Unfair Competition that "[b]y incorporating the numerous elements from Plaintiff's events . . . into Defendant Splash Dogs' events . . . Defendants Splash Dogs, Reed, and Woods have created a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and services in violation of Ohio Revised Code § 4265.02(A)(2)." (Complaint at ¶¶ 95, 102.)  Thus, Defendants' contention that they drafted their rules after holding the Columbus event largely is irrelevant to this Court's personal jurisdiction determination. Consequently, this Court has personal jurisdiction under the Ohio long-arm statute over Defendants Splash Dogs, Woods, and Reed with respect to Plaintiff's claims for Deceptive Trade Practices pursuant to O.R.C. § 4165.02 (A)(2)-(3) and Unfair Competition.

> ### B.    STEP TWO OF THE PERSONAL JURISDICTION ANALYSIS – DUE PROCESS

Having concluded that the Ohio long-arm statute is satisfied as to each claim against each Defendant, the Court now turns to step two of the personal jurisdiction analysis.  "The Court must determine whether the exercise of [personal] jurisdiction comports with constitutional due process." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (request for reh'g en banc denied).  In Ohio, a defendant may be subject to either general or specific jurisdiction. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996).  The Plaintiff does not argue that general jurisdiction exists in this case.  Consequently, the Court's analysis is limited to the standards applicable to specific jurisdiction.

A defendant will be subject to specific jurisdiction in cases in which the subject matter of the lawsuit "arises out of or is related to the defendant's contacts with the forum." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).  For the reasons stated below, this Court has

specific personal jurisdiction over Defendants Splash Dogs, Reed, Woods and Nguyen with respect to all of Plaintiff's claims.

In order for a state to exercise personal jurisdiction over a non-resident defendant, consistent with the Due Process Clause, the defendant must have sufficient minimum contacts with the forum state such that the exercise of jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has created a three-prong test to determine whether specific jurisdiction may be exercised over a defendant consistent with the Due Process Clause.

> First, the defendant must purposefully avail himself of the privilege of of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendants reasonable.

*Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 (6th Cir. 2005) (citing *Southern Machine v. Mohasco Industries*, 401 F.2d 374, 381 (6th Cir. 1968)).

According to the *Southern Machine* Court, the "purposeful availment" prong is the "'*sine qua non*' for personal jurisdiction." *Id.* at 381-82. Requiring that the defendant purposefully avail himself of the privilege of acting in the forum state ensures that he will not be "haled into a jurisdiction for random, fortuitous, or attenuated contacts." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000). Further, the purposeful availment requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "When performing a

purposeful availment analysis, it is the *quality* rather than the *quantity* of contacts that is the subject of review." *Ohio Bureau of Worker's Compensation v. MDL Active Duration Fund*, No. 2:05-CV-0673, 2006 U.S. Dist. LEXIS 35448,*32 (S.D. Ohio June 1, 2006) (citing *LAK v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)).

In order to establish personal jurisdiction over a defendant, the plaintiff must also demonstrate that "the cause of action arises from the defendant's activities" in Ohio. *Southern Machine*, 401 F.2d at 374. The "arising from" prong "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type *have a substantial connection with* the defendant's in-state activities.'" *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (quoting *Southern Machine*, 401 F.2d at 384 n.27) (emphasis in original).

The final prong of the *Southern Machine* test is that "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine*, 401 F.2d at 384. When the first two prongs of *Southern Machine* are met, "[a]n inference arises that the third factor is satisfied." *Bird*, 289 F.3d at 875. Thus, "[o]nly in an unusual case will the reasonableness element be absent where the first two elements are present." *Delta Media Group, Inc. v. The Kee Group, Inc. and Greyhound Techs., LTD.*, No.5:07CV 01597, 2007 U.S. Dist. LEXIS 80878, *18 (N.D. Ohio Oct. 31, 2007). The factors relevant to the reasonableness inquiry include, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe*, *Inc.*, 89 F.3d at 1268.

Personal jurisdiction is analyzed as to each claim against each Defendant. *See Hunter v. Mendoza*, 197 F. Supp. 2d 964, 971-72 (N.D Ohio. 2002). Accordingly, the Court will divide the analysis that follows based upon specific claims (or categories of similar claims) against specific Defendants (or groups of similarly-situated Defendants).

> **1.** **Copyright Infringement, Deceptive Trade Practices Pursuant to Ohio Revised Code § 4165.02(A)(2)-(3), and Unfair Competition**

Plaintiff's claims for Copyright Infringement, Deceptive Trade Practices under O.R.C. § 4156.02(A)(2)-(3) and Unfair Competition will be analyzed together as each relates directly to the Defendants' presentation of canine dock jumping events similar to Plaintiff's events.

> **i.** **This Court's Exercise of Personal Jurisdiction Over Defendant Splash Dogs Does Not Offend the Due Process Clause.**

> **a.** **Purposeful Availment**

The Court finds that Defendant Splash Dogs purposefully availed itself of the privilege of conducting business in Ohio by virtue of its website, www.splashdogs.com, and by promoting and holding a canine athletic event in Columbus, Ohio. The operation of an Internet website constitutes purposeful availment of acting in a forum state, "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird,* 289 F.3d at 874 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). In *Bird,* the Court held that the defendants satisfied the purposeful availment requirement by maintaining a website on which Ohio residents could register domain names and by accepting the business of 4,666 Ohio residents. *Id.* In that case, the Dotster defendants maintained a website which allowed individuals and corporations to register an Internet domain name. *Id.* at 870. Another defendant, Parsons, registered an Internet domain name on Dotster's website. *Id.* Thereafter, the plaintiff brought suit against these

and other defendants alleging that the domain name which Parson's registered infringed plaintiff's domain name. *Id.* The Dotster defendants moved to dismiss the suit against them pursuant to Rule 12(b)(2). *Id.* The Court found that the Dotster defendants had sufficient minimum contacts with Ohio to subject them to personal jurisdiction in that state by virtue of maintaining the website and by accepting the business of 4,666 Ohio residents.[16] *Id.* at 874.

Following the rationale applied in *Bird*, this Court finds that Defendant Splash Dogs is subject to personal jurisdiction in Ohio – exercising personal jurisdiction over this Defendant as to these claims does not offend constitutional due process. While the Dotster defendants and Defendant Splash Dogs both maintain an Internet website, this Court agrees with Plaintiff that Defendant Splash Dogs' website is far more targeted toward Ohio and Ohio residents than the website at issue in *Bird*. In *Bird*, the Dotster defendants merely maintained a website which was generally available for individuals and companies to register domain names and did not target any specific forum. Conversely, Defendant Splash Dogs' website targeted Ohio residents in order to promote and solicit participation in the March 2007 Columbus event and continues to target Ohio residents by keeping the results from that event posted.  In particular, Plaintiff claims that "by clicking on 'Upcoming Events'. . . an Ohio resident could (1) learn about the 'Columbus Pet Expo' where the event was held, (2) obtain 'Schedule and Event Info,' and (3) even 'Register Now' to participate in the event." (Doc. 22 at 21).  Furthermore, Defendant Splash Dogs, like the Dotster defendants, has an additional contact with Ohio – the Columbus event.  Just as the Dotster defendants sold domain names to Ohio residents, Defendant Splash Dogs accepted registration fees from numerous Ohio residents that

---

[16]  It should be noted that the plaintiff in *Bird* did not actually proffer evidence demonstrating that the Dotster defendants had sold 4,666 domain names to Ohio residents. *Id.* at 872.  Rather, the plaintiff estimated that number by dividing the total number of domain name sales in the United States by 50. *Id.*

participated in the Columbus event.  Even more compelling, Defendant Splash Dogs not only accepted registration and admission fees from Ohio residents, but actually held the three-day event in Ohio.  Accordingly, Defendant Splash Dogs purposefully availed itself of the privilege of conducting business in Ohio such that it does not "offend traditional notions of fair play and substantial justice" to subject it to jurisdiction in Ohio.  *See Int'l Shoe*, 326 U.S. at 316.

### ii.    Arise From

The Court concludes that Plaintiff's claims for Copyright Infringement, Deceptive Trade Practices pursuant to O.R.C. § 4165.02(A)(2)-(3), and Unfair Competition arise from Defendant Splash Dogs' core policies and practices, in particular, maintenance of its website and/or its hosting the canine athletic event in Columbus.  As discussed previously, "[t]his factor does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird*, 289 F.3d at 875 (quoting *Third Nat'l Bank*, 882, F.2d at 1091). In *Bird*, the court found the "arise from" prong satisfied based upon the plaintiff's allegations that the Dotster defendants committed copyright and trademark law violations by registering Parson's domain name and the Dotster defendants' contacts with Ohio were "at least marginally related to the alleged contacts between the Dotster defendants and Ohio." *Id.*

Here, the claims arise from Defendant Splash Dogs' hosting of the March 2007 Columbus event for several reasons.  First, Plaintiff alleges that Defendant Splash Dogs used its allegedly infringing "Rules & Regulations" at its March 2007 Columbus event.  Further, Plaintiff claims that the manner in which the event itself is run violates O.R.C. § 4165(A)(2)-(3) and constitutes unfair competition.  Specifically, in its motion in opposition to Defendants' motion to dismiss, Plaintiff

contends that Defendant Splash Dogs' Columbus event is an example of an infringing event. Finally, with regard to Defendant Splash Dogs' website, the supposedly infringing rules are electronically available through this platform and the Defendant used the website to promote and accept registration for the Columbus event.  Consequently, Plaintiff's claims for Copyright Infringement, Deceptive Trade Practices pursuant to Ohio Revised Code § 4165(A)(2)-(3) and Unfair Competition arise out of Defendant Splash Dogs' contacts with Ohio.

### iii.    Reasonableness

The final *Southern Machine* prong is that the exercise of jurisdiction over the particular defendant be reasonable "in light of the connection that allegedly exists between the . . . defendants and Ohio." *Bird*, 289 F.3d at 875.  In *Bird*, the court noted that the Dotster defendants could not legitimately object to the burden of defending suit in Ohio because they transacted business with Ohio residents and "Ohio has a legitimate interest in protecting the business interests of its citizens . . ." *Id.*  Likewise, Defendant Splash Dogs cannot avoid defending suit in Ohio because it has transacted business in this forum through its website as well as the canine athletic event held in Columbus.  Although it may be more convenient for the Defendant to litigate this case in California, that fact alone does not mitigate this forum's interest in protecting the business interests of the Ohio-based Plaintiff.  Thus, this Court's exercise of personal jurisdiction over Defendant Splash Dogs is reasonable.  Accordingly, the Plaintiff has sustained its burden of demonstrating that this Court has personal jurisdiction over Defendant Splash Dogs.

**b.** **This Court's Exercise of Personal Jurisdiction Over Defendants Reed and Woods Does Not Violate the Due Process Clause**

**i.** **Purposeful Availment**

"The intentional act of entering into a contract with a resident of Ohio is sufficient to satisfy the purposeful availment requirement." *Delta Media Group, Inc.*, 2007 U.S. Dist. LEXIS 80878 at *14; (citing *Southern Machine*, 401 F.3d at 382-83).  In *Delta Media Group*, the defendant entered into a contract with the Ohio-based plaintiff whereby the latter agreed to design and host a website for the defendant.  *Delta Media Group, Inc.,* 2007 U.S. Dist. LEXIS 80878 at *3.  This contractual relationship lasted from 2002 to 2006.  *Id.*  Subsequently, the plaintiff brought suit against the defendant for copyright infringement alleging that defendant's new website infringed copyrights held by plaintiff.  *Id.*  In considering defendant's motion to dismiss for lack of personal jurisdiction, the court held that the defendant's contacts with Ohio – including, negotiating an agreement with the Ohio-based plaintiff, communicating with the plaintiff regarding the agreement, and sending payment to Ohio – were sufficient to subject the defendant to personal jurisdiction in Ohio.  *Id.* at *14.  Furthermore, in rejecting defendant's motion, the court noted that the agreement between the plaintiff and the defendant required regular communications over a period of several years.  *Id.*

As in *Delta Media Group*, "Defendants Reed and Woods had regular oral and written contacts with Plaintiff in Ohio . . ." (Doc. 22 at 23.)  Furthermore, similar to the contractual relationship between the plaintiff and the defendant in *Delta Media Group*, the employment relationship between Plaintiff and Defendants Reed and Woods spanned a number of years during which time the Defendants were paid from an Ohio bank account.  While there is a discrepancy as to whether Defendants Reed and Woods worked as independent contractors – as Plaintiff contends – or full-time employees – as the Defendants maintain – it is clear that the employment relationship

-30-

involved multiple contacts over a significant period of time between the Defendants and the Ohio-based Plaintiff.  Therefore, Defendants Reed's and Woods' decision to enter into this relationship alone constitutes purposeful availment of conducting business in the forum state.  *See also,* *Faurecia*, 464 F. Supp. 2d at 707 (finding that the defendant purposefully availed himself of the privilege of conducting business in Ohio by entering into an employment agreement with an Ohio corporation and accepting compensation and benefits through the Ohio entity).  Moreover, Defendants Reed and Woods purposefully availed themselves of conducting business in Ohio by promoting and hosting Defendant Splash Dogs' canine athletic event held in Columbus.

### ii.    Arise From

Plaintiff's claims for Copyright Infringement, Deceptive Trade Practices  pursuant to Ohio Revised Code § 4165.02(A)(2)-(3), and Unfair Competition arise from Defendants Reed's and Woods' contacts with Ohio.  First, as discussed above, Plaintiff claims that the manner in which Defendant Splash Dogs' administers its canine athletic events, including the Columbus event, constitutes infringement.   Furthermore, Plaintiff contends that the Defendants' incorporated numerous elements from Plaintiff's events into Defendant Splash Dogs' events creating a likelihood of confusion in violation of O.R.C.§ 4165.02(A)(2)-(3).  For the same reason, the Plaintiff also alleges that the manner in which Defendants Reed and Woods administer Defendant Splash Dogs' events constitutes unfair competition.  Beyond Defendant Reed and Woods holding and promoting the Columbus event, the employment relationship between these Defendants and Plaintiff also relates to Plaintiff's claims.  Specifically, Plaintiff suggests that the Defendants "learned many of Plaintiff's methods and procedures for holding, promoting, and organizing canine dock jumping events" while working for Plaintiff.  (Complaint at ¶ 32.)  Accordingly, Plaintiff's claims arise out of Defendants

Reed and Woods' contacts with Ohio.

### iii.  Reasonableness

The Defendants' contacts with Ohio are such that the exercise of personal jurisdiction over them is reasonable.  Although Defendants Reed and Woods will be inconvenienced by defending suit in Ohio, Plaintiff's interest in obtaining relief is compelling.  Furthermore, Ohio has a legitimate interest in protecting the Ohio-based Plaintiff.  *See Bird*, 289 F.3d at 875.  Moreover, while Defendant Reed is a resident of California, Defendant Woods is an Indiana resident, thereby undercutting any interest California might have in resolving the controversy.  As such, Plaintiff has shown that personal jurisdiction over Defendants Reed and Woods in Ohio is reasonable. Consequently, this Court's exercise of personal jurisdiction over Defendants Reed and Woods with respect to Plaintiff's claims for Copyright Infringement, Deceptive Trade Practices pursuant to O.R.C. § 4165.02(A)(2)-(3), and Unfair Competition comports with due process.

### 2.  Tortious Interference with Business Relations

Rather than attempt to demonstrate that Plaintiff's Tortious Interference claims arose out of Defendants' physical contacts with Ohio, Plaintiff relies heavily upon the "effects test" – announced in *Calder v. Jones* – to establish personal jurisdiction over the Defendants. 465 U.S. 783 (1984).  For the reasons articulated below, the Court finds *Calder* controlling.

In *Calder*, the plaintiff brought suit against two Florida-based writers based upon an article that they authored for the National Enquirer magazine.  465 U.S. at 785.  Upon the defendants' motion to dismiss for lack of personal jurisdiction, the Supreme Court held the writers amenable to jurisdiction in California because "California [was] the focal point both of the story and the harm suffered."  *Id.* at 789.  In so holding, the Court relied on the facts that the article concerned the

-32-

California activities of an "entertainer whose television career centered in California." *Id.* at 788. The Court also noted that of the five million copies of the magazine circulated throughout the United States, 600,000 were sold in California. *Id.* at 785. Thus, the Court held that the defendants could "reasonably anticipate being haled into court" in California. *Id.* at 790.

Since *Calder*, the Sixth Circuit has applied the "effects test" narrowly "by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises." *Scotts Co.*, 145 Fed. Appx. at n.1. In particular, the Sixth Circuit has held that the fact that a foreign organization could foresee that allegedly defamatory statements would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction. *Reynolds*, 23 F.3d at 1120. In *Reynolds*, the International Amateur Athletic Federation (IAAF) issued a press release acknowledging that Reynolds – an Ohio resident and international track athlete – tested positive for steroid use during a random drug test conducted in Monaco. *Id.* at 1112. As a result of this press release, Reynolds brought suit in Ohio alleging, among other claims, defamation and tortious interference with business relations. *Id.* at 1113. In attempting to establish specific personal jurisdiction over the IAAF, Reynolds argued that his claims arose out of the IAAF's contacts with Ohio because the IAAF intentionally defamed him and interfered with his Ohio business relationships. *Id.* at 1120. Essentially, Reynolds relied on the *Calder* "effects test" and alleged that, as in that case, the brunt of the harm would be felt in the desired forum – Ohio. *Id.* The court rejected this broad reading of *Calder* and distinguished that case for several reasons.

First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not

publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction.

*Id.* Consequently, the court held that it could not, consistent with due process, exercise personal jurisdiction over the IAAF. *Id.*

### i.      Purposeful Availment

This Court has personal jurisdiction over Defendants Splash Dogs, Reed, and Woods with respect to Plaintiff's claim for Tortious Inference with Business Relations under the *Calder* "effects test." In *Reynolds*, the court stated that "although Reynolds lost Ohio corporate endorsement contracts and appearance fees in Ohio, there is no evidence that the IAAF knew of the contracts or of their Ohio origin." 23 F.3d at1120.

Of particular relevance to this case is *Scotts Co*, 45 Fed. Appx. at 114-115. In that case, the plaintiff and a French corporation negotiated and executed a contract in Ohio whereby the plaintiff agreed to purchase the corporation's lawn and garden business. *Id.* at 110. The contract contained a clause requiring the corporation to offer to sell the plaintiff any controlling interest it acquired in a consumer plant care and household insecticide company within three months from the date on which it acquired the interest. *Id.* at 110-111. Subsequent to this agreement, a merger ensued between the corporation and Aventis, one of the defendants to the action. *Id.* at 111. Thereafter, a subsidiary of Aventis acquired a controlling interest in a consumer plant care and household insecticide company. *Id.* When the plaintiff discovered this acquisition it sought to enforce its contractual right to purchase the controlling interest in the company. *Id.* Ultimately, the plaintiff was not able to acquire the interest in the lawn and insecticide company, allegedly due to tortious

-34-

interference by Aventis, and Aventis transferred this interest to StarLink, the other defendant to the action. *Id.* Plaintiff commenced an action against Aventis and StarLink for restitution and tortious interference with contractual relations. *Id.* In deciding whether to dismiss the action for lack of personal jurisdiction, the court relied upon the *Calder* "effects test" to hold the defendants amenable to suit in Ohio. *Id.* at 113-115.

In *Scotts Co.*, the Sixth Circuit found the case more analogous to *Calder* than to *Reynolds* mostly because "both [d]efendants knew of the connection between the Master Contract and the forum state, Ohio, and further knew that the Master Contract was not merely an isolated transaction, but rather, one that contemplated the possibility of future assets purchases . . ." *Id.* at 114. The court also noted that the defendants knew that the brunt of the harm would be felt in Ohio and that Ohio was the focal point of the damages. *Id.* Specifically, the court held that the defendants "purposefully directed activities at a resident of Ohio that caused consequences in the forum state and that they therefore should have reasonably foreseen that they could be haled into an Ohio court as a result." *Id.* at 114-115.

Applying the facts in *Scotts Co.* to the facts of this case, the Court finds that Defendants purposefully directed any alleged tortious interference toward Ohio. First, in contrast to the defendant in *Reynolds* and similar to the defendants in *Scotts Co.*, Defendants here allegedly knew that Plaintiff had valuable business relations with the identified corporate sponsors. Likewise, just as the defendants in *Scotts Co.* knew that the contract was not an isolated transaction but involved a continuing relationship, Plaintiff here contends that Defendants knew that Plaintiff had prospective business relations with the corporate sponsors. Thus, while it is true that the Defendants contacted Plaintiff's corporate sponsors outside of Ohio, taking the Plaintiff's facts as true, the Defendants

-35-

knew that these corporations had contractual relationships with the Ohio-based Plaintiff and, despite this knowledge, contacted these entities and asked them to reduce their sponsorship of, or forgo sponsoring, Plaintiffs.  Thus, unlike in *Reynolds*, Defendants here knew of both the contracts and their Ohio origins.  It is much likely, moreover, that the Defendants knew that this conduct would have consequences in Ohio.  In particular, the allegedly tortious interference had a direct relationship to the forum because the contracts themselves were based in Ohio.  Consequently, this Court finds that Defendants Splash Dogs, Woods, and Reed purposefully directed any tortious interference at Ohio.

### ii.      Arise From

As stated above, the "arise from" prong "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type has a substantial connection with the defendant's in-state activities." *Third Nat'l Bank*, 882 F.2d at 1091.  Here, although Plaintiff does not allege that Defendants engaged in tortious interference in connection with their Columbus event, Plaintiff at least suggests that Defendants employment relationship with Plaintiff was related to Defendants' tortious interference.  (*See* Complaint at ¶ 84 (stating that "[a]s a result of intervention by Defendants, Defendant Splash Dogs now administers and organizes, and receives the benefits of, the USDAA's Cynosport World Games' canine dock jumping events.  Defendant Reed previously worked on the Cynosport World Games events as a representative of Plaintiff DockDogs").)  Accordingly, the Court finds that Plaintiff's cause of action for Tortious Interference with Business Relations arises from Defendants' contacts with Ohio.

### iii.  Reasonableness

As a consequence of finding the first two *Southern Machine* prongs satisfied, there is an inference that subjecting the Defendants to suit in Ohio is "reasonable."  *See First Nat. Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir. 1982).  In *Scotts Co.*, the court noted that "it cannot be disputed that Ohio has an interest in resolving a suit brought by one of its residents against [d]efendants that purposefully availed themselves of acting in and causing consequences in Ohio."  145 Fed. Appx. at 115.  Just as in that case, the Court here recognizes that Ohio has a compelling interest in resolving a controversy involving allegedly tortious interference of a contract between corporate sponsors and an Ohio resident.  As such, the exercise of personal jurisdiction over Defendants Splash Dogs, Woods, and Reeds is reasonable.  Consequently, this Court has specific personal jurisdiction over these Defendants with respect to Plaintiff's claim for Tortious Interference with Business Relations.

### 3.  Defamation and Deceptive Trade Practices Under O.R.C. § 4165(A)(10)

This Court finds that it has jurisdiction over all of the Defendants except Nguyen with respect to Plaintiff's claims for Defamation and Deceptive Trade Practices pursuant to Ohio Revised Code § 4165(A)(10).  These claims do not arise out of the Defendants' physical contacts with Ohio.  It is also questionable whether the *Calder* "effects test" could be used to establish personal jurisdiction over the Defendants.  The Court finds, however, that, under the particular circumstances of this case, the doctrine of supplemental or "pendent" personal jurisdiction permits the Court to exercise personal jurisdiction over all of the claims against the Defendants who are subject to personal jurisdiction with respect to the claims analyzed above.

Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness

-37-

of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court

already has personal jurisdiction with respect to another claim or claims arising out of the same

nucleus of operative facts.[17]  Under such circumstances, Courts have recognized that exercising

pendent personal jurisdiction over claims the Court would not have personal jurisdiction over if they

arose independently satisfies Due Process concerns and serves judicial efficiency. Although the Sixth

Circuit has not explicitly recognized pendent personal jurisdiction, other Circuits, *see, e.g.*, *Hargrave*

*v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980)*, and district courts, including some within the

Sixth Circuit, *see*, *e.g.*, *Jude v. First Nat'l Bank of Williamson*, 259 F. Supp. 2d 586, 596 (E.D. Ky.

2003), have used the doctrine in cases such as this one.  *See generally* Linda Sandstrom Simard,

*Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L. J. 1619, 1625, n.25-26 (2001);

4A Charles A. Wright & Arthur R. Miller, *Federal Prac. & Proc.* § 1069.7 (2008). [18]

      In this case, the Court may exercise pendent personal jurisdiction over the Defamation and

---

[17]  As explained by Wright & Miller, the rule requiring personal jurisdiction over each defendant *as to each claim* gives rise to myriad complications in cases involving multiple defendants and claims.  Pendent personal jurisdiction seeks to address these issues.

> The personal jurisdiction discussion in the preceding sections has focused on how and when a district court may exercise personal jurisdiction over a particular defendant. However, it is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts. This often can be a source of frustration for both the plaintiff and the district court. . . . [I]n these cases fairness to the individual nonresident defendant usually is balanced against considerations of judicial efficiency, the federal policy against piecemeal litigation, and the plaintiff's convenience and need for a forum.

4A Charles A. Wright & Arthur R. Miller, *Federal Prac. & Proc.* § 1069.7 (2008).

[18]  Many cases in which the court invokes pendent personal jurisdiction involve federal claims under a statute permitting nationwide service of process.  *See* Simard, 62 Ohio St. L. J. at 1626, n.26.  A significant number of courts have used pendent personal jurisdiction in cases that do not involve such a claim, however.  *Id*. at 1630.

O.R.C. § 4165.02(A)(10) Deceptive Trade Practices claims against Defendants Splash Dogs, Reed, and Woods.  These claims are factually related to the other claims in this lawsuit – over which the Court has already found personal jurisdiction – because the Complaint alleges a concerted and, apparently, coordinated, effort on the part of Splash Dogs and its employees to unlawfully harm Plaintiff's business enterprise for Splash Dogs' benefit.  Thus, the Defamation and O.R.C. § 4165.02(A)(10) Deceptive Trade Practices claims arise out of the same nucleus of operative facts and the Court may exercise pendent personal jurisdiction over all of the claims against Splash Dogs, Reed, and Woods.

The Court may not, however, exercise pendent personal jurisdiction over Defendant Nguyen. The only claims asserted against Nguyen are the Defamation and O.R.C. § 4165.02(A)(10) Deceptive Trade Practices claims.  The Court finds that it does not have personal jurisdiction over Nguyen based on the traditional Due Process analysis or the *Calder* effects test.  Simply put, there is no allegation that Nguyen ever set foot in Ohio, and the alleged defamatory statements were made to out-of-state third-party individuals with no meaningful connection to Ohio.  This situation is analogous to *Reynolds*, not *Calder*.  *See also Cadle v. Schlichtmann*, 123 Fed. Appx. 675 (6th Cir. 2005).  Thus, unlike the other Defendants, the Court does not have personal jurisdiction over Nguyen with respect to an "anchor" claim[19] that could be used as the basis of pendent personal jurisdiction. Accordingly, the Defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED** with respect to the claims asserted against Nguyen.

### C.    SUMMARY OF PERSONAL JURISDICTION ANALYSIS

For the reasons discussed above, this Court has personal jurisdiction over all of the claims

---

[19]  Simard, 62 Ohio St. L. J. at n.27.

asserted against all of the Defendants except Nguyen, over whom the Court does not have personal jurisdiction with respect to any claims.  Accordingly, the Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED in part and GRANTED in part**.  The claims against Nguyen are **DISMISSED**.

## VII.    VENUE ANALYSIS

Having fully analyzed the Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the Court now turns to the Defendants' Rule 12(b)(3) motion to dismiss for improper venue and their motion to transfer the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404.  The issue with respect to the Rule 12(b)(3) motion is whether the Northern District of Ohio is a proper venue.  The issue with respect the motion to transfer is whether the Central District of California is a more appropriate venue under the standards and factors applicable to the statute, 28 U.S.C. § 1404.

If it is appropriate to grant the Defendants' motion to transfer the case to the Central District of California, then the Court need not analyze the Rule 12(b)(3) motion to dismiss for improper venue.  *See Plaskolite, Inc. v. Zheijiang Taizhou Eagle Mach. Co., Ltd.*, No. 08cv487, 2008 WL 5190049, at *1-2 (S.D. Ohio Dec. 9, 2008) (noting that a court lacking personal jurisdiction may nonetheless transfer the case).  Accordingly, the Court turns first to the motion to transfer under § 1404.

### A.    TRANSFER OF VENUE PURSUANT TO 28 U.S.C. § 1404

For the reasons stated below, the Court finds that transfer of venue to the Central District of California is <u>not</u> appropriate under the circumstances.

Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought.

28 U.S.C. § 1404(a).  "The statute's literal language requires that the transfer would serve the interests of justice, and that the transferred action could have been brought in the transferee court." *Bunting v. Gray*, 2 Fed. Appx. 443, 448 (6th Cir. 2001).  The requirement that the transferred action could have been brought in the transferee district has been interpreted to mean that "[i]f when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where [the action] might have been brought.' *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).

If the court concludes that the action could have been brought in the transferee district, then it must weigh a number of factors, including case-specific factors such as the convenience of the parties and witnesses, the relative ease of access to proof, and the availability of compulsory process, and public-interest factors such as the relative burdens of the courts and local interest in the dispute. *See Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).  The court should also consider the relative congestion of the fora and the familiarity of the courts with the applicable law. *Eberline v. Ajilon LLC*, 349 F. Supp. 2d 1052, 1053-54.  Finally, the Plaintiff's choice of forum is also a factor.  *See Donia v. Sears Holding* Corp., 2008 WL 2323533, at *4 n.2 (N.D. Ohio May 30, 2008) (O'Malley, J.).  The Plaintiff's choice of forum, however, "is not of paramount importance; it is instead one factor to be weighed equally with other relevant factors." *Id*. (quoting *Int'l Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995) (O'Malley, J.)).  Indeed, no one factor is dispositive; rather, transfer is appropriate if the balance of these factors "strongly"

-41-

favors trying the case in the transferee district.  *See Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp.2d 570, 573 (N.D. Ohio 1998); *Midwest Materials, Inc. v. Tougher Indus., Inc.,* 484 F. Supp.2d 726, 734 (N.D. Ohio 2007).

Before balancing the above-mentioned factors, the Court must determine whether the action could have been brought in the Central District of California.  The Defendants claim that Plaintiff could have commenced this action in the Central District of California because "all of the named [D]efendants have stipulated to have this matter transferred to the [that district] . . . and [b]oth Splash Dogs, LLC, Reed, and Woods do business in, and have substantial contacts with [that district]." (Defendant's Motion to Dismiss at 9).  Under, *Hoffman*, 363 U.S. at 344, it is "immaterial" that Defendants have consented to personal jurisdiction and venue in the Central District of California subsequent to Plaintiff's filing this action.  However, in light of the Court's analysis of the § 1404 factors, the Court will assume that each Defendant had substantial enough contacts with the transferee district such that Plaintiff could have commenced suit there in the first instance.

### 1.    Convenience of Parties and Witnesses

First, the Court must determine whether the convenience of the parties weighs in favor of transferring this case to the Central District of California.  In making this decision, the convenience of **all** parties must be taken into account.  *Apex Sales Agency v. Phoenix Sintered Metals, Inc.*, No. 1:06 CV 01203, 2006 U.S. Dist. LEXIS 77302, *6 (N.D. Ohio 2006) (emphasis added). Furthermore, "[w]hen transferring a case would only serve to shift the burden of inconvenience from one party to the other, transfer is not appropriate." *Id.* (citing *Roberts Metals, Inc. v. Florida Props. Marketing Group, Inc.*, 138 F.R.D. 89, 94 (N.D. Ohio 1991)).  In this case, while Defendants Splash Dogs, Reed and Nguyen reside in California, only Nguyen resides in the Central District of

California.[20]  Moreover, Defendant Woods resides in Indiana and Plaintiff resides in Wyoming and Ohio.  Although Defendants claim that Woods works for Defendant Splash Dogs and has substantial contacts with the Central District of California, there is no evidence that it would be more convenient for him to travel to California to defend this suit than to Ohio – a state bordering Indiana, where he resides.  As such, the Court concludes that transferring this case from the Northern District of Ohio to the Central District of California would merely shift the burden from Defendants Splash Dogs and Reed to Plaintiff.  Accordingly, this factor does not militate in favor of transferring venue to the Central District of California.

The Court must not only take into account the convenience of the parties in considering whether to grant Defendants' motion to transfer, but also the convenience of the witnesses.  Where witnesses are spread across the country, it is less likely that transferring the case to an alternative forum will be more convenient for the witnesses involved.  *Avery Dennison Corp., v. Alien Tech. Corp.,* 08 CV 795, 2008 U.S. Dist. LEXIS 98173 (N.D. Ohio Dec. 4, 2008).  Moreover, "[w]hen a party's out-of-state witnesses are its own employees, the inconvenience is greatly reduced because the party should have no difficulty compelling the employees' presence at trial."  *T&W Forge, Inc. v. V&L Tool, Inc.*, 05-CV-1637, 2005 U.S. Dist. LEXIS 24619, at *31 (N.D. Ohio Oct. 21, 2005); *Neff Ath. Lettering Co. v. Walters*, 524 F. Supp. 268, 273 (S.D. Ohio 1981).  Here, Plaintiff's employees, who will testify on the Plaintiff's behalf, are located in the Northern District of Ohio.  Furthermore, Plaintiff alleges that Defendant "Splash Dogs distributed its infringing materials and held actionable events (generating corresponding witnesses and financial documents) all over

---

[20] While Plaintiff initially named Tracy Hughes – a resident of the Central District of California – as a Defendant in this action, it later filed a motion to voluntarily dismiss her from the suit. (Doc. 28.)

including, for example, in Ohio, Arizona, Texas, North Carolina, Utah, Nebraska, Kansas, and Nevada." (Doc. 22 at 34.) Furthermore, while Defendants allege that one of Plaintiff's corporate sponsors does business in California, Plaintiff avers that witnesses testifying on their behalf with respect to the Tortious Interference claim reside throughout the country. The Defendants also argue that two members of Defendant Splash Dogs' rules committee, who helped draft the allegedly infringing "Rules & Regulations," reside in California. While the Court agrees with Defendants that these witness would probably prefer to testify in California rather than 2,500 miles away in Ohio, the Court also finds the potential prejudice to the Defendants' mitigated by the fact that these witness are employed by Defendant Splash Dogs and thus are less likely to evade testifying. Accordingly, the Court finds that the convenience of the witnesses does not weigh in favor of transferring this case to the Central District of California.

### 2.      Access to Proof and Availability of Compulsory Process

Additional factors relevant to a court's determination of whether to transfer venue include the relative ease of access to proof as well as the availability of compulsory process. *Rustal Trading US, Inc. v. Makki*, 17 Fed. Appx. 331, 336 (6th Cir. 2001); *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 290 (S.D. Ohio 2008). Defendants argue that the "access to proof" factor weighs in favor of transferring venue. In particular, Defendants claim that "all of the proof regarding Plaintiff's allegations can only be found in California with [the] [D]efendants." (Doc. 15 at 11.) As with the witnesses, however, it appears that any potential sources of proof are not concentrated in any particular location. Defendant Splash Dogs distributed allegedly infringing materials and held allegedly infringing events throughout the country. (Doc. 22 at 34.) Moreover, as Plaintiff emphasizes, "Defendants have failed to identify even one fact or source of evidence that would be

accessible or available if this action were to proceed in the Central District of California," as opposed to the Northern District of Ohio. *Id.* at 36. Furthermore, all parties will have an equal opportunity to subpoena witnesses regardless of where this action is brought. Consequently, the Defendants have failed to demonstrate that these factors favor transferring this action to the Central District of California.

### 3.    Public Interest Factors

The Court must not only weigh case-specific factors when deciding whether to transfer venue, but must also consider certain public-interest factors. *Sirak v. J.P. Morgan Chase & Co.*, 5:08CV169, 2008 U.S. Dist. LEXIS 94328, *3 (N.D. Ohio Nov. 5, 2008). The relevant public-interest factors include: the relative burdens of the courts, local interest in the dispute, relative congestion of the fora, and the familiarity of the courts with the applicable law. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). With respect to the latter factor, "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 509. In this case, Plaintiff is asserting its claims for Tortious Interference and Deceptive Trade Practices under Ohio law. As such, it is apparent that this Court is more familiar with Ohio law than the Central District of California. This factor weighs heavily against transfer to the Central District of California.

Furthermore, there is clearly a local interest in the resolution of this dispute as it involves potential tortious conduct against an Ohio resident. Indeed, Plaintiff has submitted evidence, in the form of a third-party affidavit, indicating that the Defendants' motion to transfer is part of an ongoing effort to subject Plaintiff to costly and burdensome litigation. (Doc. 22-4, Decl. of Bart

Richardson.)  Ohio has an interest in protecting its resident businesses from such predatory conduct at the hands of foreign entities.  This fact, which is supported by an affidavit the Court accepts as true in the procedural context of this case, also clearly militates against transfer based on traditional equitable principles.

Finally, Defendants have failed to demonstrate that the Central District of California has a lighter docket or will be less burdened by handling this litigation than the Northern District of Ohio.  Accordingly, Defendants have failed to demonstrate that these public-interest factors weigh in favor of transferring venue.

Defendants, however, assert an additional rationale for transferring venue to the Central District of California.  Specifically, Defendants claim that under the "first-to-file" rule the Orange County Superior Court in California has priority to resolve this case.  Essentially, Defendants argue that this Court should defer to the California state court due to the pendency of a substantially similar cause of action filed prior to this action.[21]  The Defendants' argument fails, however.  Under the first-to-file rule, "when actions involving nearly identical parties and issues are filed in two different *district courts*, the court in which the first suit was filed should generally proceed to judgment."  *Zimmer Enters., Inc. v. Atlandia Imports, Inc*., 478 F. Supp. 2d 983, 987 (S.D. Ohio 2007) (emphasis added).  Thus, as Plaintiff recognizes, this rule generally applies in cases pending concurrently in different federal district courts.  *See id.* (stating that the first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank).  Therefore, the fact that there is a potentially similar action pending in California state court does not weigh in favor of this Court transferring venue to the Central District of California.

---

[21] The Court does not reach the issue of whether the actions are, in fact, "substantially similar" because of the conclusion that the first-to-file rule does not apply in this context.

-46-

Upon balancing both the case-specific factors and the public-interest factors, the Court concludes that Defendants have failed to demonstrate that the balance of convenience weighs strongly in favor of transfer. *See Bacik*, 888 F. Supp. at 1414. Consequently, Defendants' motion to transfer venue to the Central District of California is **DENIED**.

### B.      RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE

Since discretionary transfer to the Central District of California is <u>not</u> appropriate, the Court must resolve the Defendants' Rule 12(b)(3) motion to dismiss for improper venue.

### 1.      Standard of Review for a Rule 12(b)(3) Motion

When a defendant seeks to dismiss a claim for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), plaintiff bears the burden of proving that venue is proper. *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002). A district court considering a motion to dismiss for improper venue may rely on affidavits alone, may conduct an evidentiary hearing, or may permit discovery to aid it in deciding the motion. *Id.* "If the court determines that the motion can be decided without a hearing, it 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Id.* (citing *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir. 1980)). In this procedural posture, the plaintiff must only advance a *prima facie* showing that venue is proper as to each defendant. *Zimmer Enters., Inc.*, 478 F. Supp. 2d at 986; *I.A., Inc. v. Thermacell Tech., Inc.,* 983 F. Supp. 697, 700 (E.D. Mich. 1997) (emphasis added).

When a plaintiff asserts a cause of action for copyright infringement, venue is determined under 28 U.S.C. § 1400(a). *The Lubrizol Corp., v. Neville Chem. Co.*, 463 F. Supp. 33 (N.D. Ohio 1978). Pursuant to § 1400(a), "[c]ivil actions, suits, or proceedings arising under any Act of

Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).  "A corporation is deemed to reside in any district 'in which it is subject to personal jurisdiction at the time the action is commenced.'" *In re LimitNone, LLC,* No. 08-3499, 2008 U.S. App. LEXIS 26955, *6 (7th Cir. Dec. 19, 2008) (citing 28 U.S.C. § 1391(c)); *see also Janmark, Inc., v. James T. Reidy and Dreamkeeper, Inc.,* 132 F.3d 1200, 1203 (7th Cir. 1997) (finding the definition of "reside" found in § 1391(c) applicable to venue determination under § 1400(a)).  Likewise, an individual defendant "may be found" in any federal district in which he or she is subject to personal jurisdiction.  *Walker v. Concoby*, 79 F. Supp. 2d 827, 835 (N.D. Ohio 1999); *Milwaukee Concrete Studios v. Field Mfg. Co.*, 8 F.3d 441, 445 (7th Cir. 1993); *Palmer, Star's Edge, Inc. v. Eldon Brown*, 376 F.3d 1254 (11th Cir. 2004); *Mihalek v. State of Michigan*, 595 F. Supp. 903, 907 (E.D. Mich. 1984); *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 (N.D. Ga. 1995).  Accordingly, whether Plaintiff's copyright infringement claim is properly venued in the Northern District of Ohio depends upon whether Defendants Splash Dogs, Reed, and Woods would be subject to personal jurisdiction in that district if it were a separate state.  *See Walker*, 79 F. Supp. 2d at 835 (finding venue proper because the defendants were subject to personal jurisdiction in the Northern District of Ohio).

The other claims – Defamation, Deceptive Trade Practices Pursuant to Ohio law, Tortious Interference, and Unfair Competition – are governed by the general statute, 28 U.S.C. § 1391(b).  Ultimately, however, the analysis still turns on whether the Defendants are subject to personal jurisdiction with respect to these claims in the Northern District of Ohio.  Under the general venue statute,

-48-

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Sub-section (b)(1) is inapplicable to this case because each Defendant to this action does not reside in the same State. Sub-section (b)(3) does not apply here because there is at least one other district in which these claims may be brought – the Southern District of Ohio. Therefore, in order for venue to lie in the Northern District of Ohio, Plaintiff must demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in that district as provided in § 1391(b)(2).

      **2.**       **Venue for the Copyright Infringement Claim, O.R.C. § 4165.02(A)(2)-(3) Deceptive Trade Practices Claims, Tortious Interference, and Unfair Competition**

              **i.**       **Copyright Infringement, Deceptive Trade Practices Pursuant to Ohio Revised Code § 4165.02(A)(2)-(3), and Unfair Competition Claims**

The Court's analysis of whether Plaintiff's Copyright Infringement, Deceptive Trade Practices Pursuant to Ohio Revised Code § 4165.02(A)(2)-(3), and Unfair Competition claims are properly venued in the Northern District of Ohio excludes the Defendants' contacts with the Southern District of Ohio. *See Avery Dennison Corp.,* 2008 U.S. Dist. LEXIS 98173, at *41. As such, Defendant Splash Dogs' canine athletic event held in Columbus, Ohio in March 2007 is irrelevant to the Court's venue determination as that event occurred in the Southern District of Ohio. With this in mind, the Court finds that Defendant Splash Dogs would not be subject to personal jurisdiction with respect to Plaintiff's copyright claim in the Northern District of Ohio if it were a

-49-

separate state.  As the personal jurisdiction analysis makes clear, the Columbus event is the central contact for purposes of exercising personal jurisdiction with respect to these Defendants and claims. Accordingly, the Court concludes that these claims are not properly venued in the Northern District of Ohio.

Instead, it is apparent that a proper venue for these claims is the Southern District of Ohio, where Splash Dogs' Columbus event took place.  As discussed above, the core claims over which the Ohio courts have personal jurisdiction – *i.e.*, the "anchor" claims – are the Copyright Infringement claim, the closely related Deceptive Trade Practices Claim under O.R.C. § 4265.02(A)(2)-(3), and the Unfair Competition claim under the Federal Lanham Act.  Since these anchor claims are <u>not</u> properly venued in the Northern District of Ohio, but are fundamentally tied to the Southern District of Ohio, it is appropriate to use the pendent <u>venue</u> doctrine to transfer the remaining claims over which the Ohio courts have personal jurisdiction to the Southern District of Ohio.  As discussed above in detail, Plaintiff's specifically allege that the Defendants unlawfully used and appropriated Plaintiff's intellectual property and business practices in staging competitive canine dock jumping events, including one in the Southern District of Ohio.  Accordingly, the Southern District of Ohio is the jurisdiction most associated with the conduct at issue with respect to these claims.  It may exercise personal jurisdiction over them for the reasons stated above, and it is an appropriate venue because the same considerations applicable to personal jurisdiction in Ohio generally are operative with respect to the Southern District of Ohio specifically.

It is well-established that a district court should transfer some or all of the claims in a case when it finds that it cannot exercise personal jurisdiction or venue is improper.  *See Delta Media Group, Inc.*, 2007 WL 3232432, at *6 ("Doubts about whether to transfer or dismiss are usually

resolved in favor of transfer because the interest of justice generally is better served by transfer.");
*see generally* Wright, Miller & Cooper, 14D Fed. Prac. & Proc. Juris.3d § 3827 (2008). With this
presumption in mind, the Southern District of Ohio is a proper venue for all of the claims over which
this Court has personal jurisdiction, and this Court has the authority to transfer the case to the
Southern District of Ohio *sua sponte* pursuant to 28 U.S.C. § 1406(a).[22]  *Flynn v. Greg Anthony
Constr. Co., Inc.*, 95 Fed. Appx. 726, 738 (6th Cir. 2003) (unpublished) (noting that both 28 U.S.C.
§§ 1404(a) and 1406(a) permit a district court to transfer a case *sua sponte*).

As the Supreme Court explained in the seminal case on § 1406(a), the purpose of the statute
is pragmatic:

> The section is . . . in accord with the general purpose which has prompted many of
> the procedural changes of the past few years-that of removing whatever obstacles
> may impede an expeditious and orderly adjudication of cases and controversies on
> their merits. When a lawsuit is filed, that filing shows a desire on the part of the
> plaintiff to begin his case and thereby toll whatever statutes of limitation would
> otherwise apply. The filing itself shows the proper diligence on the part of the
> plaintiff which such statutes of limitation were intended to insure. If by reason of the
> uncertainties of proper venue a mistake is made, Congress, by the enactment of §

---

[22]  Section 1406(a) states:

> The district court of a district in which is filed a case laying venue in the wrong
> division or district shall dismiss, or if it be in the interest of justice, transfer such
> case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Section 1404(a) governs transfer of properly venued actions for the sake of
convenience while § 1406 governs transfer of improperly venued actions. *Lyons v. Jameson*, No.
08cv11885, 2008 WL 4387092, at *2 (E.D. Mich. Sept. 24, 2008) ("In short, transfer under §
1404(a) is from proper district to proper district and transfer under § 1406(a) is from improper
district to proper district."). Therefore, technically, § 1404(a) applies to the claims properly
venued here and § 1406(a) applies to all of the other claims. Practically, "the end result is the
same, and very few litigants will care whether the court purports to proceed under § 1404(a) or §
1406(a) . . . ." *Flynn*, 95 Fed. Appx. at 738 n.9. The distinction is meaningful because the Court
applies a different standard for transfer under § 1406(a) than the factor-based analysis employed
above in the context of a request for transfer under § 1404(a).

-51-

> 1406(a), recognized that 'the interest of justice' may require that the complaint not
> be dismissed but rather that it be transferred in order that the plaintiff not be
> penalized by . . . 'time-consuming and justice-defeating technicalities.'

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  Following this rationale, courts apply the

language of the statute literally and transfer the case – either pursuant to a motion or *sua sponte* –

if (1) the transferee district is a proper venue and (2) transfer is "in the interests of justice" based on

the particular circumstances of the case.  For example, in *Martin v. Stokes*, 623 F.2d 469, 474 (6th

Cir. 1980), the Sixth Circuit stated:

> The law in this Circuit . . . is that § 1406(a) provides the basis for any transfer made
> for the purpose of avoiding an obstacle to adjudication on the merits in the district
> court where the action was originally brought.

*See also Campbell v. Premier Cruise Lines, Ltd., Inc.*, 838 F.2d 470 (6th Cir. 2003) (table); *Fryer v.*

*Ron Wager & Bantz, Gosch & Cremer, LLC*, No. 2:07cv593, 2008 WL 3285913, at *3 (S.D. Ohio

Aug. 8, 2008) (citing *Goldlawr*); *Delta Media Group, Inc.*, 2007 WL 3232432, at *6 (stating that

"[t]he district court may transfer a case when venue is improper in the original forum if doing so is

in the interest of justice" and transferring based on judicial economy, use of the resources, and

general efficiency); *see generally* Wright, Miller & Cooper, 14D Fed. Prac. & Proc. Juris.3d § 3827

(2008).

Chief Judge Carr has described the pendent venue doctrine as follows:

> "courts have increasingly recognized the doctrine of "pendent venue", derived from
> the concept of pendent jurisdiction. *See, e.g., Beattie v. United States*, 756 F.2d 91,
> 101 (D.C.Cir.1984) ("The doctrine of 'pendent venue' is now well established,
> particularly in cases where the court has previously exercised its discretion to hear
> a certain claim under pendent jurisdiction.").  Under the doctrine of pendent venue,
> "a federal court may in its discretion hear pendent claims which arise out of the same
> nucleus of operative fact as a properly venued federal claim, even if venue of the
> pendent claim otherwise would not lie." *Banfield v. UHS Home Attendants, Inc.*, No.

96 Civ. 4850, 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997). In making its decision, a court must consider factors such as "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants." *Id.* (citing *Rodriguez v. Chandler*, 641 F.Supp. 1292, 1302 (S.D.N.Y.1986))."

*Bertz v. Norfolk S. Ry.*, No. 3:03cv7011, 2003 WL 21713747, at *1 (N.D. Ohio Jun. 25, 2003) (quoting *Hsin Ten Enters. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000)).

Although the Sixth Circuit has not expressly adopted the pendent venue doctrine, numerous courts within the Sixth Circuit have applied it as described in *Bertz*. *See e.g.*, *Pearle Vision, Inc. v. N.J. Eyes, Inc.*, No. 08cv190, 2009 WL 73727, at *7 (S.D. Ohio Jan. 9, 2009) (using pendent venue to "avoid piecemeal litigation"); *Clayton v. Heartland Res., Inc.*, No. 08cv94M, 2008 WL 5046806, at *3 (W.D. Ky. Nov. 21, 2008) (finding pendent venue appropriate where state law claims over which district court may properly exercise supplemental jurisdiction arose from the same nucleus of operative facts as the properly venued federal claims); *Taylor v. CSX Transp., Inc.*, No. 3:05cv7383, 2006 WL 2550021 at *5 (N.D. Ohio Aug. 31, 2006) (Zouhary, J.); *see generally* Wright, Miller, & Cooper, 14D Fed. Prac. & Proc. Juris.3d § 3808 (2008).

The Court in *Taylor* aptly described the purpose and standard for pendent venue:

Generally, venue must be established for each cause of action, *Washington v. General Electric Corp.*, 686 F.Supp. 361, 362 (D.D.C.1988), and for each defendant. *New York v. Cyco.net, Inc.*, 383 F.Supp.2d 526, 543 (S.D.N.Y.2005). "Nevertheless, where venue is proper for some, but not all, claims and where, as here, the claims arise out of the same core of operative facts, plaintiffs may rely on the doctrine of 'pendent venue' to cure any venue defect." *Sisso v. Islamic Republic of Iran*, 2006 U.S. Dist. LEXIS 59137, *12 (D.D.C. Aug. 23, 2006). As the D.C. Circuit explained:

"Whether to apply the principle of pendent venue in any given case is a discretionary decision, based on applicable policy considerations. Some of these considerations will be the same as those that support the exercise of pendent jurisdiction-judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants. Other considerations unique to the context of venue will apply. For

> example, the purpose of venue rules is generally considered to be "primarily a matter of convenience of litigants and witnesses." It is also oriented to the convenience of the court system."

*Beattie v. United States*, 756 F.2d 91, 103 (D.C.Cir.1984).

*Taylor*, 2006 WL 2550021 at *5.

Here, judicial economy, convenience, avoidance of piecemeal litigation, fairness, and the convenience of the court system favor applying the pendent venue doctrine to Plaintiff's Defamation, Deceptive Business Practices under O.R.C. § 4165(a)(10), and Tortious Interference claims. Because the Defendants came to the Southern District of Ohio to conduct a canine dock jumping event, and because this conduct is directly related to their Copyright Infringement, Deceptive Trade Practices, and Unfair Competition claims, the Southern District of Ohio is a proper venue for all of the claims that arise from the Defendants' most significant contacts with the state of Ohio. Therefore, it would be inefficient, inconvenient, and wasteful of resources – for both the parties and the Court – to divide this case and try some of the claims in the Northern District of Ohio and some in the Southern District. Refusing to apply the pendent venue doctrine would obviously promote piecemeal litigation. Although the Defamation, Deceptive Business Practices under O.R.C. § 4165(a)(10), and Tortious Interference claims are not as focused on the staging of an event in the Southern District of Ohio, the claims arises from the same nucleus of operative facts, *i.e.*, the Defendants' allegedly unlawful attempt to simultaneously capitalize on Plaintiff's ingenuity and undermine its business opportunities, including operative sponsorship agreements, by using unlawful business practices and defamation. It is both manifestly efficient and fair for a single court to handle all of the claims arising from the general course of conduct alleged in the Complaint. The Court thus

finds that the pendent venue doctrine applies and, therefore, the Southern District of Ohio is an appropriate venue for all of the claims alleged in the Complaint.

Accordingly, the remaining claims in this case are hereby **TRANSFERRED** to the Southern District of Ohio.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; Improper Venue or in the Alternative to Transfer Venue* (Doc. 15) is **<u>DENIED</u> in part and <u>GRANTED</u> in part**.  Specifically, the motion to dismiss for lack of personal jurisdiction is granted with respect to all claims against Defendant Nguyen, which are hereby **<u>DISMISSED</u>**, and all of the motions are denied with respect to all other claims.  **FURTHER**, the remaining claims in this lawsuit are hereby **<u>TRANSFERRED</u>** to the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: February 13, 2009**